# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**LAWRENCE COUNTY SCHOOL DISTRICT**  **PLAINTIFF**
**OF LAWRENCE COUNTY, ARKANSAS**

v.  CASE NO. 3:17-CV-00004 BSM

**MARION MCDANIEL, Individually**
**and as Parent of CM**  **DEFENDANT**

## ORDER

Plaintiff Lawrence County School District's motion for summary judgment [Doc. No. 22] is denied as to the IDEA appeal and granted as to the non-IDEA counterclaims, except as to the issue of attorney's fees. The Arkansas Department of Education's administrative order is affirmed. *See* Compl. Ex. A, Doc. No. 1. Defendant Marion McDaniel's motion for leave to file a reply to the response to notice of additional authority [Doc. 36] is denied as moot. Lawrence County School District's motion to supplement its motion for summary judgment [Doc. No. 42] is denied.

## I. BACKGROUND

CM is a fifth-grade student in the Lawrence County School District ("LCSD"). Compl. ¶ 4. He has attended elementary school in LCSD since 2014. *Id.*

CM was diagnosed with attention deficit hyperactivity disorder ("ADHD") and autism spectrum disorder ("ASD"). *Id.* at ¶ 5; Mot. Prelim. Inj. Ex. B ¶ 2, Doc. No. 16. CM's father, Marion McDaniel, initially noticed CM's symptoms when CM was three years old, which included difficulties with speech and bladder control. Mot. Prelim. Inj. Ex. B ¶ 2;

Compl. Ex. A ("Hr'g Officer's Decision") at 18. As CM aged, he displayed other behaviors consistent with ASD. Hr'g Officer's Decision at 18.

CM has a number of social and behavioral issues stemming from his ASD. When he was in kindergarten, CM would spin in circles, avoid human contact, and have tantrums. *Id.* He would also pull out his hair as a response to his anxiety. Prelim. Inj. Hr'g Tr. at 36. Today, CM struggles with social interactions and using appropriate social skills. He finds transitions in his routines, finishing tasks, understanding boundaries, and maintaining eye contact to be challenging. Mot. Prelim. Inj. Ex. B ¶¶ 2–3. He is also impulsive and has difficulty paying attention. *Id.* at ¶ 2. CM gets into trouble in class, blurts out answers, and argues with his teacher. *Id.* He is unable to understand abstract concepts and to express his thoughts on paper. Prelim. Inj. Hr'g Tr. at 50. CM also has certain fine motor deficits and ASD-related tics, such as picking at his fingers and toes and making noise when fidgeting. *Id.* at 36. He often has difficulties interacting with his peers on the playground and is frequently teased and called names. *Id.* at 38–39.

CM, however, appears to be doing well academically. LCSD reports that CM is performing at grade level and generally earns high grades in his classes. Hr'g Officer's Decision at 14. Indeed, CM has been recognized as an honors student and was recommended for LCSD's gifted and talented program. *Id.* The principal at CM's school noted that CM's standardized test scores were high in English and reading, and CM scored proficiently in science and math. Prelim. Inj. Hr'g Tr. at 115, 117–18. CM's only current academic deficiency is in writing. *Id.* at 115, 117.

McDaniel believes that CM needs special education services, notwithstanding CM's academic success in school, because CM's ASD impairs his ability to learn important social skills and interact with his peers and teachers. *See id.* at 65–68; Mot. Prelim. Inj. Ex. B ¶ 6. McDaniel has attempted to obtain special education services for CM three times since 2014, including services in speech therapy. Hr'g Officer's Decision at 27–28. After each of McDaniel's requests, it was determined that CM's educational needs were adequately met by his 504 accommodation plan and that he did not meet the eligibility criteria for special education services. *Id.* Moreover, it was found that CM's behavior and conduct in school was acceptable, and his ASD was not hindering his learning. *Id.*

McDaniel filed a due process complaint against LCSD under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. section 1400, *et. seq.*, on May 10, 2016, alleging that CM was denied a "free appropriate public education" ("FAPE"). *Id.* at 2. A due process hearing before the Arkansas Department of Education ("ADE") was conducted and post-hearing briefs were ordered on whether CM was eligible for evaluation for an individualized education plan ("IEP"). Hr'g Officer's Decision at 1. Testimony was given by CM's special education teacher, a school psychologist who evaluated CM, the principal of CM's school, a speech and language pathologist who evaluated CM, McDaniel, and CM's mental health therapist.

The ADE hearing officer determined that LCSD failed to provide CM a FAPE when it failed to adequately evaluate CM for special education services. *Id.* at 29–30. LCSD was ordered to secure and utilize the service of a behavioral analyst in conducting a functional

3

behavioral assessment and IEP if necessary; to conduct an evaluation on CM's pragmatic language deficits, adaptive behavior deficits, and functional impairments; to secure and utilize the services of a healthcare aid for CM, if necessary; and to allow CM's mental health professionals to observe CM at school. *Id.* at 30.

LCSD filed this lawsuit appealing the hearing officer's decision. *See* Compl. ¶ 20. McDaniel counterclaimed for damages and reasonable attorney's fees. Following a hearing, a preliminary injunction was entered ordering LCSD to implement the hearing officer's decision pending the resolution of the appeal. Doc. No. 37. LCSD now moves for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute that must be resolved at trial. *Id.* Importantly, when considering a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). Additionally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

### A. IDEA Appeal

*1. Standard of Review*

The IDEA permits a party seeking review of a state administrative decision to appeal to federal district court. 20 U.S.C. § 1415(i)(2)(A). "In conducting that review, the court 'shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Independent School Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 560 (8th Cir. 1996) (quoting 20 U.S.C. § 1415(e)(2)). In other words, the reviewing court must rely on the administrative record and hear additional evidence only at the request of a party. "Judicial review of agency action may be conducted on the administrative record even if there are disputed issues of material fact. " *Id.* at 561.

"Because judges are not trained educators, judicial review under the IDEA is limited." *E.S. v. Independent School Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d 566, 569 (8th Cir. 1998). While the reviewing court must make a *de novo* determination as to whether the student was denied a FAPE, "due weight" must be afforded the administrative decision. *See, e.g.*, *T.F. v. Special Sch. Dist. of St. Louis Cty.*, 449 F.3d 816, 818 (8th Cir. 2006). This is because the hearing officer had "an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own educational policy for those of the school authorities that they review." *CJN v. Minneapolis Pub. Schs.*, 323 F.3d 630, 636 (8th Cir. 2003) (quotations omitted).

This standard of review is, therefore, less deferential than the traditional substantial evidence standard used in reviewing other administrative decisions. Further, the party challenging the outcome of the state administrative hearing bears the burden of proof. *E.S.*, 135 F.3d at 569; *Board of Educ. of Community Consolidated Sch. Dist. No. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 716 (7th Cir. 1991).

*2. Applicable Law*

A disabled child is one who (1) possesses an intellectual disability, one of several listed physical impairments, a speech or language impairment, autism, or a learning disability, and (2) requires special education services because of that impairment. 20 U.S.C. §1401(3)(A). LCSD concedes CM satisfies the first prong because he has been diagnosed with ASD, a listed impairment. Br. Supp. Summ. J. at 1, Doc. No. 23. LCSD challenges the hearing officer's conclusion as to the second prong—that CM needs to be further evaluated to determine whether his ASD warrants special education services. *Id.*

"[E]ither a parent of a child, or a State educational agency, other State agency, or local educational agency may initiate a request for an initial evaluation to determine if the child is a child with a disability." 20 U.S.C. § 1414(a)(1)(B). "Once a child is identified as potentially having a disability, the child's District '*shall conduct a full and individual evaluation*' to determine whether the child has a disability." *Independent School District No. 413, Marshall v. H.M.J. ex rel. A.J., M.N.*, 123 F. Supp.3d 1100, 1108 (D. Minn. 2015) (quoting 20 U.S.C. § 1414(a)(1)(A)) (emphasis added). Federal regulations require school districts to use "a variety of assessment tools and strategies to gather relevant functional,

developmental, and academic information about the child" and expressly prohibit the use of "any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child." 34 C.F.R. §§ 300.304(b)(1), (2).

There is also a strong preference for educating children in the least restrictive environment, requiring children with disabilities to be placed in a regular educational environment to the greatest extent possible. 20 U.S.C. §1412(a)(5)(A). "[C]hildren who can be mainstreamed should be mainstreamed, if not for the entire day, then for part of the day." *Evans v. Dist. No. 17 of Douglas Cty., Neb.*, 841 F.2d 824, 832 (8th Cir. 1988).

### 3. Administrative Decision

It is undisputed that CM has educational needs beyond those of other students. That is why he has a 504 plan. The key issue is whether the hearing officer erroneously ordered further evaluation of CM for special education services.

First, it is important to note what the hearing officer's decision does not say. It does not find that CM is "disabled." While the decision acknowledges that CM has been diagnosed with ASD, a listed impairment under the IDEA, it does not say that CM needs special education services because of that impairment. Hr'g Officer's Decision at 3. Second, it does not find that CM's 504 accommodation plan is insufficient to meet his educational needs. Rather, the hearing officer found that CM was denied a FAPE when LCSD violated its procedural obligations under the IDEA when it failed to adequately evaluate whether CM required special education services. *Id.* at 27–29.

The hearing officer found that each evaluation conference conducted, pursuant to McDaniel's requests that CM receive a special education evaluation under 20 U.S.C. section 1414(a)(1)(B), was defective. *Id.* at 27–28. The hearing officer noted that during the first evaluation conference, the individual responsible for conducting the comprehensive evaluation conference was not present to explain the required evaluation nor was a comprehensive evaluation of CM's speech conducted. *Id.* at 27. Moreover, while it was known that CM was diagnosed with ASD, no effort was made to gather information from his physician or to perform other testing regarding CM's deficits in social and communication skills. *Id.* The hearing officer noted that at the second conference, no pragmatics testing was conducted, nor was anything done to determine CM's social or adaptive behavioral deficits, if there were any such deficits. *Id.* Finally, following McDaniel's third request for an evaluation, no evaluation conference took place "because the decision was made not to test Student." *Id.* at 28. This decision was based on the finding that a student without academic deficits could not need nor qualify for special education services. *Id.*

For all these reasons, the hearing officer simply ordered that CM be further evaluated. The order requires LCSD to evaluate: (1) CM's pragmatic language and adaptive behavior deficits, (2) his impairments, if any, and (3) whether CM needs assistive technology. Moreover, LCSD is to utilize a behavioral analyst to develop and implement a functional behavior assessment and a behavior support plan, if necessary. *Id.* at 30. After all of this evaluation, LCSD must then determine whether CM needs an IEP. *Id.*

*4. Analysis*

There is conflicting evidence as to whether adequate testing and evaluation was conducted each time that McDaniel requested an evaluation. LCSD, however, has not shown by the preponderance of the evidence that the hearing officer's findings are erroneous. Moreover, there is sufficient evidence in the record to support the hearing officer's findings. For this reason, the decision must be affirmed.

It is also important to note that the witnesses who testified at the due process hearing who evaluated CM, including Lucy Sellers, CM's special education teacher; Ashley Bateman, the school psychologist; and Robin Munn, a speech language pathologist, all opined that CM did not require special education services. *See* Hr'g Officer's Decision at 4, 12–13, 16. What is less clear, however, is whether their analyses were based on assessments and evaluations comporting with IDEA's procedural requirements.

The administrative record shows that while CM was evaluated for a number of pragmatic speech and behavioral deficits, these tests were not always in conjunction with McDaniel's referrals for evaluation. It is unclear whether and when some of the required testing actually took place. For example, Munn testified that, although it was required, testing of CM's receptive and expressive language deficits were not conducted during CM's 2014 evaluation, despite the fact that this was an important part of why CM was referred for services. Doc. No. 2, Admin. R. 2, Vol. II at 112–13. LCSD disputes the hearing officer's finding that Bateman and Munn failed to adequately test CM at the first and second referrals. LCSD, however, has not clearly and specifically identified the relevant testing that was conducted and their results at each of McDaniel's referrals. Again, while there is

indisputable evidence showing that these witnesses tested CM, LCSD has not sufficiently demonstrated that this testing was contemporaneous with McDaniel's referrals or why these were adequate assessments pursuant to IDEA's procedural requirements.

Even more important is the evidence suggesting that LCSD officials erroneously concluded that CM did not require nor is eligible for special education based on his academic performance at one or more of McDaniel's referrals. Indeed, no evaluation conference was held after McDaniel's third referral because CM's impairment was not affecting his academic performance. Moreover, certain witnesses, such as Lucy Sellers and Lee Ann Cheadle, opined that CM did not need special education services on account of his academic performance. Sellers, the special education teacher, testified that in order to receive special education and an IEP in the district, a student *must* have academic deficits. Admin. R. 2, Vol. I at 53. Cheadle opined that CM did not require special education services because his academic performance was acceptable. Admin. R. 2, Vol. II at 79–80, 87. Indeed, the hearing officer noted that Cheadle "implied that as Student was intellectually-gifted academically, he could not possible [sic] qualify for or need special education services." Hr'g Officer's Decision at 28. At various IEP evaluation conferences, she based her analysis on whether CM needed special education services by looking to his academic performance. Admin. R. 2, Vol. II at 80. At the preliminary injunction hearing, Cheadle similarly implied that academically proficient students such as CM do not need special education services. Prelim. Inj. Hr'g Tr. at 132.

LCSD officials mistakenly assume that children with disabilities who perform well academically do not require special education. Although this position comports with common sense and is favored by this judge, it contravenes the IDEA's implementing regulations and guidance from the United States Department of Education. The applicable federal regulation expressly prohibits the use of "any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child." 34 C.F.R. § 300.304(b)(2). The United States Department of Education has further interpreted this regulation to say that children such as CM, commonly referred to as "twice-exceptional" or "2E," may indeed qualify for special education despite the fact that their academic abilities are average or above-average. *See* U.S. Dep't Educ., Off. Special Educ. Programs, Letter to Anonymous (Jan. 13, 2010), 55 IDELR 172. Therefore, that LCSD officials based their decision not to evaluate CM because of his strong academic performance is violative of his procedural right to adequate assessment and evaluation under IDEA.

Because of these procedural problems identified by the hearing officer, it is unclear whether CM was adequately evaluated for special education services as required by IDEA. Therefore, the hearing officer correctly ordered additional testing.

Again, the hearing officer's decision does not necessarily contradict the opinions of expert witnesses who believe that CM does not require special education services, nor does it, contrary to LCSD's assertions, assume that all children diagnosed with ASD require special education. It does not necessarily require that LCSD create an IEP for CM. It does

not violate the express goal of the IDEA that children with disabilities be placed in the least restrictive environment. Rather, a close reading of the decision simply shows that the hearing officer was, for sufficient reasons articulated in the decision and substantiated by the record, unconvinced that adequate testing had taken place in light of LCSD's procedural obligations under IDEA. LCSD could not conclude, on that basis, whether CM required special education on account of his disability, and therefore, whether he is disabled under IDEA.

LCSD has moved to supplement its motion for summary judgment [Doc. No. 42] to show that it has conducted another round of evaluations comporting with the IDEA's requirements. These new evaluations suggest that CM does not require any special education services on account of his ASD. This argument misses the mark, however, as the issue before the hearing officer concerned whether CM was adequately evaluated for services, not whether he actually required special education services. Although it has been shown that CM does not need special education services, he still has a right to proper evaluation comporting with IDEA's procedural requirements. For this reason, LCSD's motion to supplement its motion [Doc. No. 42] is denied.

  B. <u>Non-IDEA Claims</u>

McDaniel counterclaims against LCSD for violations of section 504 of the Rehabilitation Act, 29 U.S.C. section 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12132. Specifically, he contends that LCSD's refusal to enforce the hearing officer's decision during the pendency of the appeal denied CM a FAPE.

Summary judgment is granted on the non-IDEA counterclaims because McDaniel has failed to show a genuine dispute of material fact as to LCSD's intent.

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Title II of the ADA prohibits public entities from discriminating based on disability in services, programs, or activities." *I.Z.M. v. Rosemount-Apple Valley-Eagan Public Schools*, 863 F.3d 966, 972 (8th Cir. 2017) (citing 42 U.S.C. § 12132). "These statutes 'provide [ ] the same rights, procedures, and remedies against discrimination.'" *Id.* (quoting *Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 812 (8th Cir. 2007)).

In addition to the elements listed above, the Eighth Circuit has "consistently held that where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *B.M. ex rel. Miller v. South Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (quotation omitted). "This reflects the notion expressed by the court in *Monahan*, that in limiting liability to discrimination 'solely by reason of . . . handicap,' Congress did not intend to create general tort liability for reasonable decisions made by professionals in the educational context." *M.Y., ex rel., J.Y. v. Special School Dist. No. 1*, 544 F.3d 885, 889 (8th Cir. 2008) (quoting *Monahan v. State of Neb.*, 687 F.2d 1164, 1170–71 (8th Cir. 1982)).

LCSD had a clear and indisputable obligation to implement the hearing officer's decision as soon as it was entered, pursuant to IDEA's "stay-put" requirement, unless it petitioned a reviewing court for a stay. *See* 20 U.S.C. § 1415(j); Doc. No. 37. LCSD did not move for a stay, and its disagreement with the hearing officer's order and subsequent appeal does not excuse its obligation under IDEA's "stay-put" provision. *See, e.g., Dist. of Columbia v. Masucci*, 13 F. Supp.3d 33, 43 (D. D.C. 2014) ("Although the District believed that the hearing officer's decision was incorrect, the District was not free to simply ignore its obligation to comply with the [hearing officer's decision]."). This refusal arguably denied CM a FAPE under the IDEA.

The parties now dispute whether McDaniel has put forward sufficient evidence creating a genuine dispute of fact as to LCSD's intent to violate section 504 and the ADA. McDaniel has not offered sufficient evidence to create a triable issue of fact that LCSD acted with "bad faith" or "gross misjudgment" when it failed to implement the hearing officer's order pending resolution of the appeal. First, McDaniel points to an email from the Arkansas Department of Education's ("ADE") deputy general counsel to McDaniel's attorney stating that the ADE would notify LCSD and its attorneys of the district's obligation to implement the hearing officer's order. *See* Resp. Mot. Summ. J., Doc. No. 29, Ex. 2. He suggests that this is sufficient to show that LCSD was on notice of its obligation to implement the hearing officer's decision and failed to do so in bad faith. It does not. While this email suggests that ADE was aware that LCSD was obliged to comply with the order and failed to do so, it does not, by itself, establish whether this information was actually conveyed to LCSD, that its

14

officials were on notice of their duties under IDEA, or that they intentionally failed to comply with the decision and their obligations under IDEA's "stay-put" provision.

Second, McDaniel moved, in his response, to defer consideration of LCSD's motion for summary judgment until discovery concluded on November 22, 2017, so as to obtain additional evidence concerning LCSD's state of mind and whether it was on notice of its obligations under IDEA's stay-put requirement. Resp. Mot. Summ. J., Doc. No. 29, ¶¶ 3–4. Although no ruling was made on this "motion" within his response, discovery has been closed for over four months. McDaniel has not sought leave to supplement his response with any additional evidence.

For these reasons, summary judgment is granted to LCSD on McDaniel's counterclaims, except as to the issue of attorney's fees. If appropriate, McDaniel may make a separate motion for an award of fees.

## IV. CONCLUSION

For the reasons set forth above, LCSD's motion for summary judgment [Doc. No. 22] is denied as to the IDEA appeal and granted as to the non-IDEA counterclaims, except as to the issue of attorney's fees. The administrative decision below is affirmed, and McDaniel's motion for leave to file a reply to the response to notice of additional authority [Doc. 36] is denied as moot. The case is dismissed with prejudice.

IT IS SO ORDERED this 30th day of March 2018.

*Brian S. Miller*
_____

UNITED STATES DISTRICT JUDGE